NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HARVEY D. WOLINETZ, PARK CAPITAL FUNDING, LLC, PARK NATIONAL MORTGAGE SERVICING, H.D.W. 2005, LLC, H&N ASSOCIATES, ARETZ ASSOCIATES, H.D.W. 2005 FOREST, LLC, H.D.W. NEW CASTLE, LLC, and H.D.W. 2005 EDGEWATER, LLC,<br><br>    Plaintiffs, Counter Defendants.<br><br>v.<br><br>ELIYAHU WEINSTEIN, RIVKA BICHLER, SIMCHA SHAIN, ELANA SHAIN, MICHAEL GINDI, NEW CEDAR HOLDINGS, LLC, OCEAN REALTY 101, LLC, PINE PROJECTS, LLC, NH-K MEMPHIS, LLC, ARTHUR FEIN, and ARTHUR FEIN ENTERPRISES,<br><br>    Defendants, Counter Claimants. | Civ. No. 08-5046<br><br>**OPINION** |
| ELIYAHU WEINSTEIN, RIVKA BICHLER, NEW CEDAR HOLDINGS, LLC, OCEAN REALTY 101, LLC, PINE PROJECTS, LLC, and NH-K MEMPHIS, LLC,<br><br>    Cross Claimants,<br><br>v.<br><br>MICHAEL GINDI,<br><br>    Cross Defendant. | |

| |
|---|
| ELIYAHU WEINSTEIN, RIVKA BICHLER, NEW CEDAR HOLDINGS, LLC, OCEAN REALTY 101, LLC, PINE PROJECTS, LLC, and NH-K MEMPHIS, LLC, <br><br> Third-Party Plaintiffs, <br><br> v. <br><br> ARTHUR FEIN, ARTHUR FEIN ENTERPRISES, and H.D.W. 2005, LLC, <br><br> Third-Party Defendants. |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion for Partial Summary Judgment filed by Plaintiffs Harvey D. Wolinetz; Park Capital Funding, LLC ("PCF");[1] H.D.W. 2005, LLC; H&N Associates; Aretz Associates; H.D.W. 2005 Forest, LLC; H.D.W. 2005 New Castle, LLC; and H.D.W. 2005 Edgewater, LLC (collectively, "Plaintiffs") against Defendant Eliyahu Weinstein. (ECF No. 237.) The Motion is unopposed. The Court has decided this Motion on the written submissions of the parties, pursuant to Local Rule 78.1(b). For the reasons stated herein, the Motion is granted in part and denied in part.

## BACKGROUND

This case arises from allegations that Defendant Weinstein and others perpetrated fraud costing Plaintiffs tens of millions of dollars. Because the Motion for Partial Summary Judgment is unopposed, the following represents the facts of this case as presented by Plaintiffs.

---

[1] PCF and Park National Mortgage Servicing appear in this case as separate entities. However, they aver that the former "conducts business under the name" of the latter. (Pl.'s Stmt. of Undisputed Material Facts ¶ 4, ECF No. 237-2.) The Court considers these nominally distinct Plaintiffs to be one and the same.

Plaintiff Wolinetz is a real estate investor. (Pl.'s Stmt. of Undisputed Material Facts ("SOUMF") ¶ 1, ECF No. 237-2.) Plaintiff Aretz Associates is a partnership, 20% of which is owned by Plaintiff Wolinetz. (*Id.* ¶ 6.) The status and ownership of Plaintiff H.D.W. 2005 New Castle, LLC has not been elucidated. All other Plaintiffs are business organizations owned and controlled entirely by Plaintiff Wolinetz. (*Id.* ¶¶ 4, 5, 7–9.)

Between June 2005 and February 2006, Defendant Weinstein approached Plaintiff Wolinetz about investing in a parcel of land in Edgewater, Florida. (*Id.* ¶ 24.) Defendant Weinstein represented that he and Plaintiff Wolinetz would be partners in this investment. (*Id.* ¶ 27.) As a result of these representations, Plaintiffs PCF, H&N Associates, and Aretz Associates provided Defendant Weinstein with $37.5 million. (*Id.* ¶ 28.) Defendant Weinstein then bought the Edgewater property in his own name and resold it without the consent of Plaintiff Wolinetz or any Plaintiffs who had invested. (*Id.* ¶ 32.) These Plaintiffs' money was not returned. (*Id.* ¶ 42.)

Around November 21, 2005, Plaintiff Wolinetz provided an $8 million loan to Defendant Weinstein to purchase a building in Berkeley Township, New Jersey. (*Id.* ¶¶ 102, 106.) Defendant Weinstein never purchased the property as planned, but instead purchased other properties. (*Id.* ¶ 107.) All interest in those properties was later allegedly transferred to Plaintiff H.D.W. 2005, LLC. (*Id.* ¶ 120.) Most of the $8 million was not returned to Plaintiff Wolinetz. (*Id.* ¶ 125.)

In March 2005, Defendant Weinstein approached Plaintiff Wolinetz seeking a $1.4 million loan. (*Id.* ¶ 52.) Defendant Weinstein stated that he would use the money to purchase a shopping center in New Castle, Pennsylvania through "his entity AM OBR LP," and subsequently convey all membership interest in AM OBR LP to Plaintiff H.D.W. 2005 New Castle, LLC. (*Id.* ¶ 53.) Plaintiff H.D.W. 2005 New Castle, LLC would also receive interest on

3

all profits earned from the property. (*Id.* ¶ 55.) Plaintiff PCF provided the loan, which was never used to purchase the property. (*Id.* ¶¶ 56–57.)

In May 2005, Plaintiffs Wolinetz, PFC, and H&N Associates loaned over $6 million to Defendant Weinstein to purchase the Seagull Shopping Center in Ocean County, New Jersey. (*Id.* ¶¶ 60, 62.) Defendant Weinstein had promised Plaintiff Wolinetz that he would provide a secured mortgage on the property, and a mortgage was executed. (*Id.* ¶¶ 61, 63.) On June 29, 2005, Defendant Weinstein's attorney, Benjamin Hager, sent a letter to Plaintiff Wolinetz advising him that he was holding $9 million in escrow to pay off another existing mortgage on the property. (*Id.* ¶ 64.) Contrary to Hager's representations, no funds were held in escrow. (*Id.* ¶ 67.)

Around October 2005, Plaintiff Wolinetz provided $11.2 million to Defendant Weinstein "and his associates" for the purchase of the Kimball Cabana and New Horizon apartment complexes in Memphis, Tennessee (the "Memphis Properties"). (*Id.* ¶¶ 131, 136.) Defendant Weinstein and Hager represented that the property could be quickly "flip[ped]" to another buyer and that money was sitting in escrow for this purpose. (*Id.* ¶¶ 131, 133.) Plaintiff Wolinetz was aware that this arrangement was contingent on the buyer securing financing, but was not aware of the precise amount of financing that the buyer would need to secure. (*Id.* ¶ 135.) That buyer never purchased the property. (*Id.* ¶ 139.) Additionally, Defendant Weinstein later stated that the ownership of the property was assigned to Plaintiff H.D.W. 2005, LLC. (*Id.* ¶ 140.)

Around March 2005, Defendant Weinstein proposed that Plaintiff Wolinetz invest $5 million to purchase vacant land on Forest Avenue on Staten Island, New York. (*Id.* ¶ 147.) Plaintiffs PCF and H&N Associates provided the funds. (*Id.* ¶ 150.) Contrary to Defendant Weinstein's prior representations, profits from this venture were not split evenly with Plaintiff Wolinetz. (*Id.* ¶¶ 149, 152.) Hager then prepared organizational documents stating that Plaintiff

4

Wolinetz had complete ownership interest in Plaintiff H.D.W. 2005 Forest, LLC; he sent this document to Plaintiff Wolinetz. (*Id.* ¶ 151.) Unbeknownst to Plaintiff Wolinetz, Hager also prepared documents establishing Defendant Weinstein as "the 100% member" of Plaintiff H.D.W. 2005 Forest, LLC. (*Id.* ¶ 152.) The latter set of documents was used to obtain loans secured by the Forest Avenue property. (*Id.* ¶ 153).

Defendant Weinstein engaged Plaintiffs in a number of other alleged investments where various Plaintiffs lost money. (*Id.* ¶¶ 43–51, 75–101, 126–30, 159–64.)

On January 3, 2013, Defendant Weinstein pled guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, and one count of transacting in criminal proceedings in violation of 18 U.S.C. § 1957. (Plea Agreement at 1, ECF No. 237-7; Indictment at 1–34, 43, ECF No. 237-5.) The Indictment alleges that Defendant Weinstein made myriad misrepresentations to "H.D.W." and other investors. (Indictment at 7–33.) It also alleges that Defendant Weinstein engaged in a monetary transaction in the form of a "[c]heck in the approximate amount of $250,000 drawn on the account of Watch Hill Funding in New Jersey made payable to an entity controlled by H.D.W. in New York." (Indictment at 43.) Defendant Weinstein's plea generally admits guilt to these two counts but does not specifically tie Defendant Weinstein's criminal behavior to particular victims or to particular investment schemes. (Plea Agreement at 8–9.)

Plaintiffs filed suit in this case on October 10, 2008 (ECF No. 1) and filed the Amended Complaint on May 20, 2009, alleging twelve counts in total (ECF No. 53). This case was stayed from November 2010 until October 2016 while criminal proceedings against Defendant Weinstein were pending. (ECF Nos. 123–24, 160.)

On September 14, 2018, Plaintiffs filed the present Motion seeking summary judgment on the following counts: (1) Violation of the Racketeer Influenced and Corrupt Organizations

5

Act ("RICO"), 18 U.S.C. § 1962(c); (2) Conspiracy to violate RICO, 18 U.S.C. § 1962(d); (4) fraud; (5) breach of fiduciary duty; (6) conversion; (8) unjust enrichment; (9) breach of contract (10) promissory estoppel; and (11) civil conspiracy. (ECF No. 237.) As of the date of this Opinion, Defendant Weinstein has not filed opposition.[2]

**LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). Consequently, "[s]ummary judgment is precluded if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993) (citing *Anderson*, 477 U.S. at 248).

---

[2] Opposition to the Motion was originally due October 1, 2018. *See* Local Civ. R. 7.1(d)(2); http://www.njd.uscourts.gov/motion-days-0. In a letter docketed on October 3, 2018, the Court stated that it would consider the Motion unopposed if it did not receive a response from Defendant Weinstein by October 16, 2018. (ECF No. 240.) On October 17, 2018, Defendant Weinstein requested that the Court stay the current proceedings in light of Defendant Weinstein's habeas challenge to his criminal conviction. (ECF No. 241.) The Court declined to stay the case and gave Defendant Weinstein until October 31, 2018 to oppose the Motion. (ECF No. 242.) After it appeared that Defendant Weinstein may not have received mail that was sent to him (ECF Nos. 243–44), the Court sent a new Letter Order on December 6, 2018 requiring that Defendant Weinstein oppose the Motion by December 17, 2018. (ECF No. 245.) The Court has not received any communication from Defendant Weinstein since then.

In resolving a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits." *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

Summary judgment is denied on the First (civil RICO) and Second (RICO conspiracy) Counts for all Plaintiffs. Summary judgment is granted for Plaintiffs Wolinetz, PCF, H&N Associates, and Aretz Associates (collectively, "Investing Plaintiffs") on the Fourth (fraud), Fifth (breach of fiduciary duty), Sixth (conversion), Eighth (unjust enrichment), Ninth (breach of contract), and Tenth (promissory estoppel) Counts. On the Eleventh Count (civil conspiracy), summary judgment is granted for Plaintiffs PCF and H&N Associates, but denied for Plaintiffs Wolinetz and Aretz Associates. Summary judgment is denied on all Counts as to Plaintiffs H.D.W. 2005, LLC; H.D.W. 2005 Forest, LLC; H.D.W. New Castle, LLC; and H.D.W. 2005 Edgewater, LLC (collectively, "LLC Plaintiffs").

**I.   Summary Judgment is Denied on the First Count (Civil RICO)**

18 U.S.C. § 1964(c) provides a civil remedy to "[a]ny person injured in his business or property by reason of a violation of" 18 U.S.C. § 1962. Section 1962(c) states in turn:

It shall be unlawful for any person employed by or associated with any enterprise

7

> engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

A plaintiff in a civil RICO action must therefore prove that he was harmed as a result of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). A pattern requires at least two predicate acts of racketeering activity. *Id.* (citing § 1961(5)). "Racketeering activity" is defined by statute to include violations of many federal laws, including mail fraud, § 1341, wire fraud, § 1343, and transacting in criminal proceedings, § 1957. § 1961(1).

In this case, Plaintiffs have not shown that they were harmed by a pattern of racketeering activity. First, Defendant Weinstein's criminal convictions do not establish such a finding. Defendant Weinstein pled guilty to conspiracy to commit wire fraud, 18 U.S.C. § 1349, but this offense is not included in the statutory definition of racketeering activity. Defendant Weinstein also pled guilty to transacting in criminal proceedings, § 1957, specifically to transacting a "[c]heck in the approximate amount of $250,000 drawn on the account of Watch Hill Funding in New Jersey made payable to an entity controlled by H.D.W. in New York." (Indictment at 43.) While this violation of § 1957 constitutes racketeering activity under the statute, Defendant Weinstein's conviction based on this one incident does not demonstrate the required pattern of racketeering activity, and Plaintiffs have not shown how they were harmed by this action.

Outside of the criminal convictions, Hager sent Plaintiff Wolinetz two letters, one falsely stating that $9 million was being held in escrow to pay off an existing mortgage (SOUMF ¶¶ 64, 67), and the other falsely stating that Plaintiff Wolinetz had a complete ownership interest in Plaintiff H.D.W. 2005 Forest, LLC (*id.* ¶¶ 151–53). These letters, if sent in the mail, would likely constitute mail fraud under § 1341, but Plaintiffs have not shown how they were harmed by the misrepresentations contained in the letters.

Simply put, Plaintiffs cannot tie the harm that they suffered to a pattern of racketeering activity. As a result, summary judgment must be denied as to the civil RICO Count.

**II.     Summary Judgment is Denied on the Second Count (RICO Conspiracy)**

18 U.S.C. § 1962(d) states, "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section," and § 1964(c) correspondingly provides a civil remedy to "[a]ny person injured in his business or property by reason of" such a conspiracy.

Summary judgment cannot be granted on the RICO conspiracy claim for the same reason that it cannot be granted on the substantive RICO claim: Plaintiffs have not demonstrated how they have been harmed by the statutory violations alleged. As stated above, Defendant Weinstein pled guilty to transacting in criminal proceedings and may have abetted mail fraud, but Plaintiffs have not shown how they were injured by these actions.

**III.    Summary Judgment is Granted for Investing Plaintiffs on the Fourth Count (Fraud)**

Under New Jersey law, fraud consists of "(1) a material misrepresentation of a presently existing or past fact;[3] (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997) (citing *Jewish Ctr. v. Whale*, 432 A.2d 521, 524 (N.J. 1981)).

Defendant Weinstein represented that he and Plaintiff Wolinetz would be partners in the Edgewater, Florida investment, but in reality Defendant Weinstein purchased the property in his

---

[3] Although the New Jersey Supreme Court does not appear to have ruled on this question, "the great majority of the American courts" have held that a false statement of intention is a misrepresentation of a presently existing fact and gives rise to liability for fraud. Restatement (Second) of Torts § 530 reporter's note (Am. Law Inst. Oct. 2018 update).

9

own name. (SOUMF ¶¶ 27, 32.) There is no indication that Defendant Weinstein purchased the property in his own name due to mistake and did not provide any justification for his action. In reasonable reliance on Defendant Weinstein's representations, Plaintiffs PCF, H&N Associates, and Aretz Associates provided money for the project that was never returned. (*Id.* ¶¶ 28, 42.) This establishes the elements of fraud for Plaintiffs PCF, H&N Associates, and Aretz Associates.

In another incident, Defendant Weinstein represented that Plaintiff Wolinetz's loan would be used to purchase a building in Berkeley Township, New Jersey, but he never purchased the building as promised. (*Id.* ¶ 102, 107.) Plaintiff Wolinetz provided the loan in reasonable reliance on Defendant Weinstein's statements of his intentions. (*Id.* ¶ 106.) The money that Plaintiff Wolinetz invested was never returned to him. (*Id.* ¶ 125.) These facts demonstrate fraud as to Plaintiff Wolinetz. Summary judgment is therefore granted for Investing Plaintiffs on the Fourth Count.

**IV.     Summary Judgment is Granted for Investing Plaintiffs on the Fifth Count (Breach of Fiduciary Duty)**

Breach of fiduciary duty requires a showing that (1) a fiduciary relationship existed, (2) a fiduciary duty related to that relationship was breached, and (3) harm resulted from the breach. *Indus. Mar. Carriers, Inc. v. Miller*, 399 F. App'x 704, 710 (3d Cir. 2010) (citing *McKelvey v. Pierce*, 800 A.2d 840, 859 (N.J. 2002)). "A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *F.G. v. MacDonell*, 696 A.2d 697, 703–04 (N.J. 1997) (citing Restatement (Second) of Torts § 874 cmt. a (Am. Law Inst. 1979)). Fiduciary relationships "aris[e] in a vast array of factual settings, [including duties of] agents to their principals; partners to their other partners; [and] brokers . . . to their clients." *Innes v. Marzano-Lesnevich*, 136 A.3d 108, 123–24 (N.J. 2016) (LaVecchia, J., dissenting) (collecting cases).

Once a fiduciary relationship is established, the fiduciary owes a duty of loyalty and a duty to exercise reasonable skill and care. *F.G.*, 696 A.2d at 704 (citing Restatement (Second) of Trusts §§ 170, 174 (Am. Law Inst. 1959)).

Here, the facts establishing fraud in the previous section also establish breach of fiduciary duty. Investing Plaintiffs entrusted Defendant Weinstein with money that they believed would be used for real estate investment. This created a fiduciary duty, and Defendant Weinstein had duties of loyalty and care that were breached when he used Investing Plaintiffs' funds for purposes other than those that had been promised. Investing Plaintiffs are therefore entitled to summary judgment on this Count.

## V. Summary Judgment is Granted for Investing Plaintiffs on the Sixth Count (Conversion)

Conversion is "the exercise of any act of dominion in denial of another's title to . . . chattels, or inconsistent with such title." *Meisels v. Fox Rothschild LLP*, 2018 WL 3077960, at *5 (N.J. Super. Ct. App. Div. 2018) (citing *Mueller v. Tech. Devices Corp.*, 84 A.2d 620, 623 (N.J. 1951)). An unpaid loan does not, by itself, constitute conversion. *Id.* But a sham loan obtained by fraud is conversion. *Chi. Title Ins. Co. v. Ellis*, 978 A.2d 281, 287 (N.J. Super. Ct. App. Div. 2009). As explained above, Defendant Weinstein obtained funds from Investing Plaintiffs through fraud. His retention of those funds therefore constitutes conversion. Summary judgment is therefore granted for Investing Plaintiffs on this Count.

## VI. Summary Judgment is Granted for Investing Plaintiffs on the Eighth Count (Unjust Enrichment)

Unjust enrichment is a "quasi-contract doctrine." *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007). To prove unjust enrichment,

> a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust. The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at

the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.

*VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (internal citations omitted).

In the present case, Investing Plaintiffs provided funds to Defendant Weinstein. (SOUMF ¶¶ 28, 106.) Plaintiffs PCF, H&N Associates, and Aretz Associates did so expecting that Plaintiff Wolinetz would be a partner in the Edgewater, Florida real estate investment. (*Id.* ¶ 27.) Plaintiff Wolinetz did so expecting that his funds would be used to purchase property in Berkeley Township, New Jersey. (*Id.* ¶ 102.) In both instances, Defendant Weinstein retained the benefit of the funds without fulfilling the promises he had made and without providing remuneration to Investing Plaintiffs (*id.* ¶¶ 32, 42, 107, 125); this retention is unjust. For these reasons, summary judgment is granted in favor of Investing Plaintiffs on this Count.

**VII. Summary Judgment is Granted for Investing Plaintiffs on the Ninth Count (Breach of Contract)**

A cause of action for breach of contract requires demonstrating "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). As explained in the above sections, Defendant Weinstein solicited money from Investing Plaintiffs by promising to use their funds for particular purposes. Investing Plaintiffs provided the funds, but Defendant Weinstein failed to use those funds as promised. This establishes breach of contract for Investing Plaintiffs.

**VIII. Summary Judgment is Granted for Investing Plaintiffs on the Tenth Count (Promissory Estoppel)**

A successful claim for promissory estoppel requires a showing of "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Toll Bros., Inc. v. Bd. of Chosen Freeholders*, 944

A.2d 1, 19 (N.J. 2008) (internal citation omitted). As discussed previously, Defendant Weinstein made representations to Investing Plaintiffs, Investing Plaintiffs relied on these promises, and Investing Plaintiffs suffered as a result of their reasonable reliance. Summary judgment is therefore granted for Investing Plaintiffs on the Tenth Count.

IX. **On the Eleventh Count (Civil Conspiracy), Summary Judgment is Granted for Plaintiffs PCF and H&N Associates, but Denied for Plaintiffs Wolinetz and Aretz Associates**

Civil conspiracy is:

a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.

*Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (quoting *Morgan v. Union Cty. Bd. of Chosen Freeholders*, 633 A.2d 985, 998 (N.J. Super. Ct. App. Div. 1993)). Conspiracy requires an agreement to commit an act that, if carried out, would create a cause of action in its own right. *Id.*

Plaintiffs PCF and H&N Associates provided funding to Defendant Weinstein to purchase land on Forest Avenue. (SOUMF ¶ 147.) In return, Defendant Weinstein agreed to establish Plaintiff Wolinetz as the sole owner of H.D.W. 2005 Forest, LLC. (*Id.* ¶ 151.)[4] However, Defendant Weinstein transferred interest to himself. (*Id.* ¶¶ 152–53.) This constitutes tortious conduct in its own right. Plaintiffs have also presented evidence showing that Defendant Weinstein conspired with his attorney, Hager, to commit this tort because Hager prepared false documents showing that Plaintiff Wolinetz was the sole owner of H.D.W. 2005 Forest, LLC. (*Id.* ¶ 151.) Plaintiffs PCF and H&N, as the investors in this transaction, have demonstrated that they

---

[4] Although Plaintiff Wolinetz was an intended beneficiary of this arrangement, no evidence has been presented that he personally contributed to the project or was otherwise harmed.

13

are entitled to summary judgment on the civil conspiracy Count.

However, Plaintiffs Wolinetz and Aretz Associates cannot point to any instance where Defendant Weinstein conspired with another person to harm them. Hager sent Plaintiff Wolinetz a letter stating that he was holding money in escrow to pay off a mortgage on the Seagull Shopping Center. (*Id.* ¶ 64.) While the statement was false (*id.* ¶ 67), and suggests an agreement between Defendant Weinstein and Hager, there is no evidence that Plaintiff Wolinetz acted in reliance on this misrepresentation. No agreement to commit underlying tortious conduct has been established, so conspiracy also cannot be established either.

Separately, Defendant Weinstein and Hager represented to Plaintiff Wolinetz that the Memphis Properties could be quickly resold to another buyer, and that money was being held in escrow for this purpose. (*Id.* ¶¶ 131, 133.) As above, this suggests that Defendant Weinstein and Hager agreed to work together with regard to the Memphis Properties. However, Plaintiffs have not demonstrated any tortious conduct with regard to this project.[5] A conspiracy claim based around the Memphis Properties has thus not been established.

Plaintiffs also argue that Defendant Weinstein conspired with others by borrowing excessive amounts of money from them, encumbering the properties in which Plaintiffs had invested. (Pl.'s Br. at 26, ECF No. 237-1.) But a lender is not necessarily a co-conspirator, and Plaintiffs have not shown that these individuals lent money to Defendant Weinstein for the purpose of engaging in unlawful activity.

Finally, Defendant Weinstein's criminal convictions cannot establish civil conspiracy

---

[5] Plaintiff Wolinetz alleges that he was deceived because he knew that the new buyer needed to secure financing but did not know *how much* financing needed to be secured. (*Id.* ¶ 135.) But Plaintiffs have not established that this was a material representation that would give rise to a fraud claim, nor have they established that Defendant Weinstein and Hager agreed to make this misrepresentation.

with regard to Plaintiffs Wolinetz and Aretz Associates. Although Defendant Weinstein pled guilty to conspiracy to commit wire fraud, the Indictment does not specifically identify victims.[6] For this reason, Plaintiffs Wolinetz and Aretz Associates cannot link Defendant Weinstein's conspiracy to the harm they suffered.

For these reasons, summary judgment is granted for Plaintiffs PCF and H&N Associates but denied for Plaintiffs Wolinetz and Aretz Associates on the Count of civil conspiracy.

## X. Summary Judgment is Denied for LLC Plaintiffs

The four LLC Plaintiffs—H.D.W. 2005, LLC; H.D.W. 2005 Forest, LLC; H.D.W. New Castle, LLC; and H.D.W. 2005 Edgewater, LLC—have not demonstrated that they are entitled to summary judgment on any Counts. No evidence has been presented to show that any LLC Plaintiffs provided any financing for projects proposed by Defendant Weinstein. At several times, Defendant Weinstein stated that he would transfer interest in properties and profits to Plaintiffs H.D.W. 2005, LLC and H.D.W. 2005 New Castle, LLC. (SOUMF ¶¶ 53–55, 120, 140.) There is no indication, however, that these entities acted in reliance on these representations or were otherwise harmed. Additionally, Hager sent a letter to Plaintiff Wolinetz stating that he had complete ownership of Plaintiff H.D.W. 2005 Forest, LLC (*id.* ¶ 151), but there is no indication that Plaintiff H.D.W. 2005 Forest, LLC was harmed as an entity. Finally, H.D.W. 2005 Edgewater, LLC is not mentioned in Plaintiffs' Statement of Undisputed Material Facts except for its identification as a party. (*See id.* ¶ 9.)

Because there has been no indication that LLC Plaintiffs lost money or suffered other harm, summary judgment cannot be granted on the First (civil RICO), Second (RICO conspiracy), Fourth (fraud), Fifth (breach of fiduciary duty), Tenth (promissory estoppel), or

---

[6] To the extent that the Indictment mentions Plaintiffs in this case, it only names "H.D.W. and a group of H.D.W.'s relatives, business partners and clients." (¶ 35.)

Eleventh (civil conspiracy) Counts. Summary judgment cannot be granted on the Sixth Count (conversion) because no evidence has shown that LLC Plaintiffs lost chattels to which they once had title. And because LLC Plaintiffs did not confer a benefit to Defendant Weinstein or enter into a contract with him, summary judgment on the Eighth (unjust enrichment) and Ninth (breach of contract) Counts would be inappropriate. Summary judgment is thus denied for LLC Plaintiffs on all Counts.

## **CONCLUSION**

For the foregoing reasons, the Motion for Partial Summary Judgment is granted in part and denied in part. An appropriate order will follow.

Date:  1/3/19  */s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.